If you'll please the court, George Beeler, appearing for the defendant and appellant Fabel Roque. Your Honor, I believe this presents a pretty simple issue. Mr. Roque was sentenced to 78 months for participating in a sale of over 50 grams of meth. And at the time of the sentencing, the court predicated the sentence, explicitly predicated the sentence, on a fact that was not true. Namely, that Mr. Roque was willing and predisposed to participate in this transaction. We wanted to present to the court the testimony of the informant who had approached Mr. Roque and drawn him into this transaction. That informant was then, at the time of the sentencing, serving time on a murder conviction in California State Court. But the information available to me, primarily through my client, was that Mr. Roque, at the time he engaged in this sale of drugs, was plotting not to sell drugs, but to extricate himself from MS-13, the gang that he had more or less been born into. Wasn't he willing to sell 3.5 grams, but not more? Your Honor, I think he was not really willing even to sell the 3.5 grams. But if we said the 3.5 grams, that would have been a much lower sentence, in fact, one he had really already served by his time in custody. So the real question was whether he was willing to sell the much larger amount that was, in fact, sold. How do you deal with the fact that on prior appeal we found that there was sufficient evidence of his not being willing to sell, so that an instruction should have been given? And in this case, the judge said the evidence is unequivocal that he had the intention. Are those two things consistent? Well, Your Honor, I believe on the prior appeal, the basis for reversal was that the- The failure to give an instruction on sentencing. The failure to give instructions. But the failure to give an instruction has to be predicated on there being evidence of sentencing entrapment. Yes. So if there was evidence in the prior trial that we found and required an instruction to be given, how do you square that with the district court judge here saying that it was unequivocal that he had the predisposition? Can you square it? No, I don't think I can. I don't think you can either. Are you in agreement with that? I'm throwing you a lifeline. Right, right. He's not expecting it. I mean, clearly the reversal by this court was that the jury had to decide that issue in the first trial. But despite the fact that there was evidence, ambiguous evidence, the fact of the matter is that as the judge at sentencing articulated his decision, he said there was clear predisposition. And that's contrary to our prior mandate. I'm sorry? That is contrary, exactly contrary to our prior mandate. Yes. Unequivocal is pretty unequivocal, isn't it? Yes, yes. Let me ask this question. As I understand it, because of the reversal and because there wasn't a desire to retry the defendant, he was no longer exposed to the mandatory minimum of 10 years. Right. And so I'm curious, is there authority for the fact that the court in sentencing the defendant should have relied on a guideline that would say that the 3.5 would have been the appropriate way to assess the guidelines as opposed to the over 50 grams? Is there any authority for that? I'm not aware of any authority, Your Honor. Okay. If the case had been retried on that issue, and we were hoping to be able to retry it, except the government then pulled the mandatory minimum out. But had we retried it, then we certainly would have hopefully succeeded in persuading the jury that it was at most the 3.5 grams. There's an issue of sentencing entrapment that's been in the case, obviously. And the court was not willing to find that there was sentencing entrapment, used the very unequivocal language that he was predisposed and he was willing. Apart from sentencing entrapment, though, there's also the issue simply of duress. So whether or not there was sentencing entrapment in the technical sense. Ms. Beaulieu, the problem with your appeal is that you're really appealing an abuse of discretion in failure to grant a continuance to get C.I. Vega's testimony. Yes, Your Honor. But you made a proffer of evidence, which included all his testimony. Yes, Your Honor. And the judge accepted it instead of giving you a continuance. So how were you prejudiced by not getting a continuance? Did the judge accept it? I don't think the judge accepted it. He permitted it to be filed. I presume he read it. Well, he accepted it and then found that it was contrary by saying it was unequivocal. Yes. I mean, he rejected it as something that should influence his sentence. He didn't accept it as something that he believed. If he believed it, I don't think he would have given the sentence that he gave. I see. And in all events, he did do us a favor. Do you think he would have done any differently if he had heard from Vega? I would hope so. I don't know for certain because I have not yet put him on the stand and there's always questions about how someone will perform on the stand and if they would be credible. But I don't understand how the judge could have accepted all of these facts and still rendered such a high sentence. At the same time, we were pointing out to the judge that as Mr. Roque sat in jail on this extended sentence, there were important issues at play in the superior court having to do with the custody of his children, having to do with the whereabouts of his wife and so forth. So he was very concerned about his family circumstances, which he might be able to play a role in if he got out of custody. So the judge was aware of that as well and still. I'm not clear whether you want us to, what you're asking for. Are you asking for us to reverse because there was an abuse of discretion and not granting the continuance, or are you asking us to reverse because there is no way Judge Anderson could have found unequivocal evidence in light of what our prior disposition said? And really, doesn't that make a difference in what we do here? I'm not sure I understand what you're saying. I'm sorry if I'm being obtuse here. Well, I'm saying that the failure to grant a continuance is reviewed for abuse of discretion, but the failure to follow our prior mandate comes under the law of mandamus, and you didn't follow the instructions. So we would almost have to reverse on that ground.  I really don't care which ground you put. Right, but doesn't one of them lead you to a resentencing before this judge and the other one leads you not to a resentencing, or do they both lead to resentencing? I'm sorry, I'm really not sure how to answer that question. So do you believe that the trial judge did not weigh the factors that you look at in terms of granting a continuance and erred in that fashion? Yes. And not giving – were you with him at the sentencing? I don't think. Yes, I was. Were you at the sentencing with him? Not the first sentencing, but the second. The second sentencing? Yes. And so the judge didn't give you the chance to go and interview Vega, and you had to wait a while for funds or something to go and visit him? We had funds at the time of the sentencing, and we in fact had an appointment to see him a week later. So we could have acted pretty quickly on that if he hadn't been sentenced. You don't object to resentencing before the same trial judge? I didn't see anything in your briefs that would indicate that. I didn't. You might have your druthers, but do you have any legal ground for saying that? I don't think there's legal grounds. I couldn't say that Judge Anderson would not make an honest appraisal of this evidence. I just wanted him to have this evidence before him. It was almost as if it was going over his head at this point. I didn't understand why he wouldn't be willing to give us the short time necessary in order to flesh out. At this point, without Vega's testimony, all he has is a proffer. It's, of course, based upon what my client is saying happened and what he told Vega and what Vega knew because Vega discussed these things with him about his effort to get out of town and get away from the gang and so forth. If Vega came in and said those things, then I think that Judge Anderson would give that a fair appraisal. What do you think about the government's argument that some kind of affidavit or letter would have sufficed to be presented at the sentencing? What's your response to that argument that they made? I don't think a letter from some guy sitting in jail is anything close to having live testimony. You're obviously dealing with a witness that you want to look at. It's easy to write a letter, but you would really need to evaluate his credibility, and I think you can only do that in person. It may have fallen flat, but I think the sentencing guidelines give us the right on such an important issue that would have such a big impact on the sentence to be able to draw that witness in and have him testify. I don't understand why Judge Anderson was so resistant to it. Obviously, it clutters up his calendar a little bit, but not that much. Hadn't the sentencing been adjourned once before? I think he might have been ready to address it. It had been adjourned, but not for any cause from the defense. Okay. There was an issue of the client not being brought to court because he was ill in the detention center. There may have been one other procedural problem, but those were both short continuances and they were not in any way attributable to me or my client. All right. Thank you, counsel, for your time. Thank you. Good morning, Your Honors. May it please the Court, Kathy Yu on behalf of the United States. Between March and April 2010, the defendant before you negotiated and ultimately sold to a confidential informant and fellow MS-13 member approximately 55.1 grams of methamphetamine. I agree with defendant. This is a simple issue, and I'd like to start with Judge Wardlaw's question relating to the mandate, if that's okay. The question was raised as to whether Judge Anderson failed to follow the mandate by rejecting defendant's sentencing entrapment claim, and I don't think so. This wasn't fully briefed or borne out by the papers, but what happened in the first case was his failure to give a jury instruction on sentencing entrapment in the context of a jury trial. Here, though, at this resentencing stage before Judge Anderson, it was at a stage in which there was no jury, and defendant bore the burden of proving sentencing entrapment by preponderance. If we said that an instruction on sentencing enhancement should have been given, I think you'll agree that that means that there was evidence of sentencing entrapment. Absolutely, Your Honor. There was some evidence tending to show that. So when Judge Anderson said he was unequivocally predisposed, he was disagreeing with the assessment of the evidence by the Ninth Circuit? He was disagreeing with the proffer that was made by the defendant as to what the confidential informant's testimony would be and how that would shed light on it. How could he disagree with the proffer if the proffer was exactly that, that he didn't intend to, that he wanted to get a higher amount, 55 grams rather than 3.5? And that's precisely it. The proffer only went to defendant's lack of intent, not his lack of capability and the Ninth Circuit law's fear. It also went under lack of capability because he didn't have the money to buy the 55 grams that had to be fronted by Vega and lack of resources under the Uriman case is something to be taken into consideration, is it not? Absolutely. It is one factor to be taken into consideration. But in context of everything that the court heard throughout trial, it was unequivocal that there was no sentencing entrapment. And because this wasn't borne out in the papers, I'd like to give some detail as to what the trial judge heard and the negotiations. I don't think you can go beyond the papers and the record before us. It's in the underlying trial record, Your Honor, and I think you could consider that it's still part of the same case, and it was that defendant had a supplier. He had someone that he had used regularly. He told the confidential. Why didn't you beside us tell this? It wasn't raised in defendant's papers. It wasn't in he had discussed the mandate at all. We didn't know that that was being attacked. But here it is part of. What do you mean? Wasn't it in the blue brief? It wasn't with respect to the mandate and that Judge Anderson wasn't abiding by it. I don't think that was in the papers. I thought that was a big part of this case. I think a big part of this case was the district court, whether or not he accepted the proffer. But in the record, it's clear that there was a supplier. Let me point out to you whether the issue of the mandate was raised. In the gray brief at page one, the claim that the evidence before the court irrefutably ruled out sentencing entrapment is contradicted by this court's ruling on the first appeal that there was some foundation in the evidence to support sentencing entrapment. It wasn't briefed, Your Honor. It was just one line in the introduction. There was no case law for us. How often does it have to be repeated in order to be briefed? Your Honor, I would say that in the context of the entire trial record, it wasn't illogical or implausible to find that defendant wasn't entrapped into providing this larger quantity because, like I said, he had a supplier he had used before. He told the confidential informant, in fact. I honestly think it's really inappropriate for you to be bringing this stuff up now. It hasn't been brought to our attention. There's no way we can look at it as you're talking and the other side can't respond to it. Your Honor, and then I'll refer the court to what is in the record. There was a call between the defendant and his supplier in which the confidential informant was present, and the defendant was on the phone call with the supplier asking him to obtain the two ounces. And he said, I already have the money and everything. This time I'm not going to let you down. And he was telling the supplier, no, it's three. We're looking for three. The confidential informant who's next to him chimes in and says, no, it's actually two. And so the defendant gets back on the phone and tells the supplier, two, yes, but it has to be pure. He has such a connection with this supplier that he's able to tell him the quantity that he wants. He's able to tell him, no, make sure your methadone is pure. But he didn't have the drugs himself, and he didn't have the money. So, you know, the fact that he didn't have the money shows that he wasn't dealing at that level, nor does the fact that he had the drugs himself. And, in fact, didn't he offer the confidential informant an opportunity to talk to the supplier and to do the deal with the supplier? He did, but notwithstanding that, the confidential informant and defendant continued to negotiate, and the defendant stayed on the transaction. At no time did he say, no, I don't want to do this anymore. He didn't express the type of reluctance or the intimidation that we see in Ninth Circuit precedent. And with respect to funds, it's not that abnormal or so illogical or so implausible for a mid-level distributor to not have the funds on hand and to have to be fronted to have that money in order to pay for the drugs. And also, there's more in the record. So what I just cited to you is GR-122, and at 114, leading up to the transaction, defendant is instructing the confidential informant on how to stretch out his product, how to cut it. And he says, you use two pure ones, and the other one you make it into two. You cut the other one, and that's it, man. So you have five ounces. You get five ounces total. You understand? And that's at GR-114. And he's, in essence, expressing the type of ardent ambition, the same type of enthusiastic assistance that we see in this Court's precedent. Okay, let me just ask you this, because I'm really concerned about the proffer. The defendant wanted to proffer, well, actually the defendant wanted to bring a witness in, a live witness to come in and testify, who had previously asserted his Fifth Amendment privilege and wouldn't testify before. Once that case was resolved that he was concerned about, he was willing to come in and testify on behalf of the defendant in this case. And so the defendant wanted the live witness, and I don't know who asked for the proffer, but most of the testimony that would have supported the proffer would have been exculpatory, as far as the entrapment went. And so the judge really rejected that proffer, didn't he, instead of accepting it? I think he accepted it. Didn't he say, even if he said that, I don't believe him. And to that extent, he really didn't accept the proffer. I think what he did was look at the proffer as the best case scenario of what the confidential informant might say. But that wouldn't have been the best scenario, because the best scenario would have been for the confidential informant to be there and testify and exculpate the defendant on the sentencing entrapment. Isn't the live testimony, live exhibits always the best evidence of something? I think we just heard defendants say that sometimes you put the confidential informant or other people on the stand and they falter or the testimony falls flat. So in that sense, this was the best case scenario in the sense of if every single fact defendant thought the confidential informant might say was Bornell. And we don't know whether it would have been Bornell. But the judge did not accept that. And just, I mean, it's the defendant's risk. But the sentencing guidelines seem to say if there's a dispute, you need to resolve that dispute. And if the defendant wants to take the risk of the CIA faltering, that's the risk he wants to take. That's his strategy. It's not up to the government. Absolutely, Your Honor. But this wasn't the first time he had offered a sentencing entrapment argument. The judge had already heard this argument four times before. But are you talking about at trial? No, I'm talking about in his original objections to the pre-sentence report on October 24, 2014, in his sentencing mirandum on November 1, 2014, at the sentencing hearing on March 3, 2015, in which not only did the court allow defendant to present a transcript of another transaction between defendant and the confidential informant. He also played it in open court. He allowed defendant to speak. And at no time did defendant choose to say anything about his state of mind during these transactions. What about the government's failure to submit anything in discovery concerning the communications between the CI and his handlers? And, Your Honor, this was very vigorously litigated in the trial court proceeding leading up to trial and even after there was a motion to compel post-trial proceedings in which defendant asked for recordings involving his client, lab notes, janks, exculpatory material, any evidence tending to indicate that any of the government's witnesses testified falsely or incorrectly at trial. And to each of those categories that defendant asked for, there was no such discovery. There were no communications between the government and the confidential informant instructing him as to how much to obtain. And, in fact, I'll add, even though this is not squarely before the court, that this was asked at trial. I don't know why you're resorting so much to stuff that is not before the court. It seems a little bit of a desperate move. If it should have been considered by us, you should have put it in front of us. And I'll say it was also not raised or briefed by defendant in his opening brief. Yeah, but we have the sentencing transcript in front of us, so I can read what was argued and what was represented at the sentencing. And, Your Honor, there was no motion to compel any sort of discovery from the government in that regard and nothing taken up on appeal to appeal the district courts now because there was simply nothing brought before the district courts then. All right. Well, thank you, counsel. You're over your time. Thank you, Your Honor. Do you need a minute to rebut the stuff that was brought up that was outside the record? Well, the stuff that's outside the record is what happened at the trial. And the trial, to my knowledge, existed only of the I'm sure there was a government agent that testified about some of the logistics of setting up this controlled by. And otherwise, I think the only real evidence of guilt were the recorded conversations between But this is the trial that we reversed because of the failure to give the instruction, right? Yes. Okay. My only point was going to be that the trial relied entirely upon the recorded conversations and those are the conversations in which we believe the CI, the informant, would testify that he knew that Mr. O.K. was going along with this because of his fears of retaliation from the gang. So that evidence in the trial doesn't address the point that we're arguing now for why we should have been able to bring that witness in. Well, that also explains why it's not before us, this appeal. All right. Thank you, counsel. Thank you, Your Honor. U.S. v. Roe K. is submitted.
judges: Wardlaw, Bea, Drain